JOSEPH BIEN, PLAINTIFF BELOW AND DEFENDANT IN ERROR, v. HERMAN UNGER ET AL, DEFENDANTS BELOW AND PLAINTIFFS IN ERROR.

Argued March 21, 1900—Decided June 18, 1900.

1. In an action for negligence the right of the defendant to have his plaintiff bear the burden of proving the charge made in the declaration is a substantial one, which burden may be borne either by proof of some negligent act or by proof of circumstances from which the defendant's want of due care is a legitimate inference. Where neither sort of proof is forthcoming the plaintiff should be nonsuited. *Quære.* Whether, as a matter of practice, the trial court may hold the motion to nonsuit until the close of the defendant's case.

2. *Res ipsa loquitur* applied to the testimony and distinguished from the practice motion above mentioned.

3. In order to charge a master with negligence in permitting the use by his servant of a particular machine upon proof of its tendency to behave in an unaccountable and dangerous fashion, something in the nature of *scienter* must be proved or be fairly inferable from the testimony, and the history ascribed to the machine must be such as could reasonably be deemed to be either a forerunner or a warning of the accident that actually happened.

On error to the Essex county Circuit Court.

For the plaintiffs in error, *Edward M. Colie.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

GARRISON, J.   The plaintiff recovered a judgment for damages received while operating a machine furnished him by the defendants.   The relation between the parties was that of master and servant.   The declaration, after stating that it was the duty of the master to use due care to provide a safe machine and to keep it in a safe condition, alleged that he negligently let it " be and remain " out of order, by reason of which the plaintiff was injured.

The alleged vice in the operation of the machine was that a trip-hammer that should have remained suspended above a die until released by pressure upon a treadle, descended without apparent cause, crushing the hand of the plaintiff while he was in the act of feeding metal to the die.   Why the hammer so descended did not appear in the case.   The testimony as to facts does not suggest any explanation that accounts for it, while the explanation put forward to account for it wholly lacks any facts to support it.

With respect to this accident, nothing is proved excepting that it happened, and if it' happened without interference with the treadle, no hypothesis whatsoever has been advanced to account for it that has the slightest foundation in the testimony.   Now, the issue tendered by the *narr* placed upon the plaintiff the burden of proving something by preponderance of proof—something that was, to say the least, more consistent with the negligence of the defendants than it was with their innocence.

This right of the defendant to have his plaintiff bear the burden of the affirmative is a substantial one and not a mere matter of form.   *McGilvery* v. *Newark Electric L. and P. Co.*, 34 *Vroom* 591.

This burden may be borne by direct proof of some negligent act or by the proof of circumstances from which the defendant's want of due care is a legitimate inference.

In the present case it is not pretended that there was any direct proof of negligence. Indeed, it cannot be seriously contended that at the close of the case anyone could say what caused the machine to act as it is said to have done, still less to indicate what part of it was defective or out of order or whether any part of it was. An occurrence that remains unaccounted for after the extraordinary scrutiny to which this one has been subjected cannot, with any show of reason, be said to have been discoverable by the exercise of ordinary care.

At one time it seemed to me that this judgment might be sustained upon the ground that the history of this particular machine for such erratic and dangerous behavior was such that it was a question whether it was not negligence for the master, knowing this history, to permit the plaintiff to use it. This charge is fairly within the lines of the declaration and was one of the grounds upon which the jury was instructed that the plaintiff might recover. The proposition of law is unassailable, but after repeated readings of the testimony I have not found any proof that this machine had ever before so acted that its behavior upon the occasion when the plaintiff was injured should or could have been anticipated.

It is true, and not controverted, that there were prior occasions upon which the hammer had descended when it should not have done so, but in every such instance it is also true, and not controverted, that the vice in its operation was due to some obvious mechanical disorder, by reason of which some part broke away from the rest or became jammed, or worked loose and remained so until relieved by re-adjustment or repair. One witness only—Charles Biel—testified in chief that when this machine was out of order two years before the "hammer would go up and down," but upon cross-examination he specifically explained that the trouble to which he had then referred was that the hammer would come down

near the die, or even touching it, and stay there until it was pushed up again to its place by the operator. Now, the slightest acquaintance with the mechanism of this machine makes it clear that this occurrence had nothing in common with the one described by the plaintiff, and could in no sense be either a forerunner or a warning of subsequent behavior so radically different.

To charge the master with negligence in permitting the use of this machine because of its unaccountable tendency to behave in a dangerous fashion, something in the nature of *scienter* must be proved, or at least be fairly inferable from the testimony. Unless this be done there is no particular in which negligence has been shown by the greater weight even of probability. There is no such thing as negligence at large.

This is not one of those cases in which the plaintiff, in default of proof of the particular in which the defendants were negligent, may point to the occurrence by which he was injured and say that this of itself made the probability that the defendants had acted carelessly of greater weight than the presumption that they had not, which is the doctrine called *res ipsa loquitur*.

In the present case *res ipsa*, viz., the behavior of the machine as described by the plaintiff, does not with any greater weight of probability suggest negligent conduct attributable to the defendants than it does mechanical errancy unknown to them. Upon the whole the probabilities are the other way. My conclusion, therefore, is that when the motion for a nonsuit was made, a *prima facie* case had not been presented by the plaintiff and that the motion should have been granted unless the trial judge in the exercise of a sound discretion did right to reserve his ruling until the close of the defendants' testimony. By force of this practice, which is alluded to in the opinion of this court in Bahr *v.* Lombard Ayers Co., and there said to be unsettled, a trial court may refuse to grant a nonsuit at the close of the plaintiff's testimony, not because the plaintiff has made out a *prima facie* case, but because he has "presented a case in which all of the

relevant facts were so exclusively within the knowledge and control of the defendants that the law imposed upon them the duty of offering explanatory testimony." *Bahr* v. *Lombard Ayers & Co.*, 24 *Vroom* 233.

This mere practice motion should not be confounded, as it sometimes is, with the doctrine of *res ipsa loquitur*, from the fact that the same phrase has unfortunately and, as I think, inaptly been applied to it. Although the propriety of the practice is not within the lines of this decision, I think it is well, in view of the language cited in our Supreme Court from other jurisdictions, to guard at this time against even a seeming acquiescence in the confusion of *res ipsa loquitur* with this mere practice motion for which *reus ipse dicat* (let the defendant himself tell) would be an apt term. *Newark Electric Co.* v. *Ruddy*, 33 *Vroom* 505.

*Res ipsa loquitur* imports that the plaintiff has made out a *prima facie* case without any direct proof of actionable negligence—*reus ipse dicat* would mean that the motion to nonsuit the plaintiff would not be disposed of until the close of the defendant's case. An illustration of the sort of citation deprecated will be found in *Clark* v. *Nassau Electric Railroad Co.*, 9 *N. Y. App. Div.* 51; 6 *Am. Elec. Cas.* 234, cited in *Newark Electric Co.* v. *Ruddy*, 33 *Vroom* 509: "The rule is one that relates merely to negligence *prima facie,* and it is available without excluding all other possibilities. * * * The doctrine of *res ipsa loquitur* simply calls upon the defendant, after proof of the accident, to give such evidence as will exonerate him, if any there be, and relieves the plaintiff from the burden of proving the non-existence of an adequate explanation or excuse."

Here the confounding of two things so totally different as the establishing of a *prima facie* case against the defendants, with the carrying over of the motion to nonsuit until the close of the defendants' case, has led to the announcement of a rule of law by which a defendant's guilt is made to depend upon the success with which he can exonerate himself from a charge that has admittedly not been made out against him.

In the case before us the plaintiff had the benefit of having the defendants' motion held until the defendants had testified; when, in my opinion, the motion to nonsuit should have been granted. If the trial judge should not have held the motion, then he should have granted it at the close of the plaintiff's case. In any event there must be a new trial, and to that end a reversal of the present judgment.

*For affirmance*—None.

*For reversal*—MAGIE (CHANCELLOR), DEPUE (CHIEF JUSTICE), VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH. 13.