OTEFF WILSON, PLAINTIFF-APPELLANT, v. PUBLIC SERVICE CO-ORDINATED TRANSPORT AND ARTHUR HESTIFER, DEFENDANTS-RESPONDENTS.

Submitted October 25, 1940—Decided February 4, 1941.

For the plaintiff-appellant, *Andrew O. Wittreich*.

For the defendant-respondent Arthur Hestifer, *Carl T. Freggins*.

For the defendant-respondent Public Service Co-ordinated Transport, *Henry H. Fryling* (*William H. Spear* and *James O. Boyd,* of counsel).

The opinion of the court was delivered by

WELLS, J. The appeal is from a judgment entered upon the granting of a nonsuit by the trial court sitting in the Supreme Court with a jury at the Essex Circuit.

The plaintiff sued to recover damages for personal injuries sustained by him while he was a passenger on a trolley car of the Public Service Co-ordinated Transport (hereafter referred to as the Transport).

The action was against the Transport, Arthur Hesterfer, impleaded as Arthur Hestifer, the operator of the westbound car in which plaintiff was riding, and Daniel Hanifin, impleaded as Daniel Hanifan, the operator of the eastbound trolley car which was also involved in the accident. On the evening of November 10th, 1936, sometime after six-fifteen, the plaintiff boarded at Newark one of the Transport's trolley cars for his home in Montclair. After paying his fare he sat down between two other passengers on the long seat at the left front of the westbound car with his back toward the window. Bloomfield avenue in the vicinity of the accident is

straight and has two sets of tracks, one running east and the other west.

The appellant's version of the facts preceding, during and immediately following the accident is thus stated in his brief:

"The trolley traveled through Newark and on into Bloomfield Avenue, Bloomfield. As the car traveled along this avenue, it started going down a hill at the intersection at Ella Street, and Hill Street, at a fast rate of speed. Wilson then saw the conductor" (meaning the operator) "whom he had been watching, suddenly turn his head and duck. The next thing there was a big bang and he was knocked out of his seat and to the floor of the trolley. After the accident, he was taken in the car to Montclair and then taken to the Mountainside Hospital, where he was treated for his injuries.

"Arthur Hestifer, the operator of the trolley in which the plaintiff, Wilson, was a passenger, testified that as he drove west on Bloomfield Avenue, between Hill and Ella Streets, down-grade, he saw an eastbound car, and when three or four hundred feet down the incline, there was a crash as the cars passed one another. The headlights of the trolley were on and with the light they threw, he could see a couple of blocks ahead. He did not notice anything on the side of the trolley as it came towards him. After the crash, he stopped his car in forty feet; he went back and there was a man lying in the middle of the tracks, that is, between the eastbound and westbound tracks.

"Daniel Hanifer, the operator of the eastbound trolley testified there was a crash as they passed the westbound trolley. He, however, knew of no man on the side of his car."

Appellant's counsel contends in his brief that the above recital of facts brings the case within the rule of *res ipsa loquitur* and clearly established a *prima facie* case of negligence. He cites *Mumma* v. *The Easton and Amboy Railroad Co. el al.*, 73 *N. J. L.* 653.

There might be some merit in this contention were it not for the fact that the above recital of the facts by plaintiff's counsel is not in conformity with the theory of the case as outlined in his opening and in the opening by the counsel of defendants, nor with the theory upon which the case was tried.

While the openings of counsel for the respective parties do not appear in the state of the case, yet it does appear by the remarks made by the trial court on the motions for nonsuits at the close of plaintiff's case that the plaintiff's counsel in his opening made no mention of depending upon the doctrine of *res ipsa loquitur* but explained that the cause of the accident was the presence of a trespasser on the eastbound trolley. The trial court, in ruling that *res ipsa loquitur* was not applicable, said:

"We do know, from the plaintiff, as well as the defendant's openings, that there was a trespasser on the trolley car proceeding in the opposite direction from the one in which this man was a passenger and that that passenger was on that part of the car, which, in the opening the plaintiff described himself, indicating that there was such a small space" (the testimony being eight to twelve inches) "between the two cars, that this trespasser's body being on this other car, when it came in contact with the car in which this plaintiff was riding that as a result of the trespasser's presence the accident occurred. Then he went on to disclose the fact that the trespasser was killed in that accident. The plaintiff and the defendant in their opening explained that. It is before this court so how can I say it is *res ipsa loquitur?*"

That the facts and circumstances under which the accident occurred were explained by plaintiff's counsel in his opening is also indicated by the statement made by Mr. Boyd, counsel of defendants, in his first motion for a nonsuit, to the effect that counsel for the plaintiff in his opening "explained how the accident happened;" from which Mr. Boyd argued that the doctrine of *res ipsa loquitur* had not been raised. In his final motion for nonsuit he said:

"I move for a nonsuit on the ground that there is no evidence of any negligence on the part of the defendant in this case; that from the testimony in this case it is clearly evident that a third party trespasser caused this accident in that he was on the side of a trolley car, on the blind side of a trolley car, and was crushed between the east and westbound trolley car and that was the proximate cause of the window breaking which the plaintiff in this case contends caused his injury. \* \* \*"

To this plaintiff's counsel replied—"There is no testimony before your Honor about another body, as Mr. Boyd says, coming between these two trolley cars, * * *."

Nowhere in the record can we find where plaintiff's counsel challenged the allegations of the court or defendant's counsel that in his opening he had explained how the accident happened. He evidently did not regard statements made by counsel in his opening as having the same force and effect upon a trial court in deciding a motion for nonsuit as the "testimony" of witnesses.

In the case of *Carr et al.* v. *Delaware, Lackawanna and Western Railroad Co.,* 78 *N. J. L.* 692, 696; 75 *Atl. Rep.* 928 (at *p.* 930), Mr. Justice Bergen speaking for this court said:

"In directing a verdict against a defendant upon the opening of counsel, the trial court must give the statement of facts made by counsel the same force and effect as if they were duly testified to by witnesses; * * *."

We know of no good reason why this same rule should not be invoked in considering a motion for a nonsuit.

In the Mumma case, *supra,* which contains many citations and has itself been frequently cited, this court, speaking of the doctrine of *res ipsa loquitur,* said:

"* * * This principle is that when through any instrumentality or agency under the management or control of a defendant or his servants there is an occurrence, injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords *prima facie* evidence that there was want of due care * * *."

"The rule of '*res ipsa loquitur*' is a rule of evidence only. It takes more than the mere happening of an accident to set the rule in operation. * * * The thing causing the accident must have been under the control of the defendant or his servant at the time of the accident. * * *" 8 *Thompson's "Commentaries on the Law of Negligence" (White's Supplement),* §§ 1 to 7923, § 7635 (*p.* 1022).

From the statement of plaintiff's counsel in his opening, and the other testimony, it clearly appears that the "thing

causing the accident" in the instant case was the body of the trespasser on the eastbound car, and manifestly it cannot be argued that his body was under the control of the defendants.

The case of *Dentz* v. *Pennsylvania Railroad Co.*, decided by this court in 75 *N. J. L.* 893, 894; 70 *Atl. Rep.* 164, seems to be in point with the instant case. Mr. Justice Bergen in speaking for this court said:

"* * * When nothing appears except that a boat, coming into a slip under ordinary conditions, collides with another moored therein, a presumption of negligence in the operation of the moving boat arises, but where, as in this case, the plaintiffs show the conditions under which the accident happened, and the question is raised whether, under the circumstances specified, the conduct of the defendant was negligent, the rule *res ipsa loquitur* does not apply * * *."

"Where it appears that the proximate cause of the injury, at least in part, was the act of a third person over whom the carrier had no control, the doctrine of *res ipsa loquitur* does not apply and the duty of proving the negligence of the carrier rests on the passenger." *Thompson's "Commentaries,"* 456, § 2767.

In the performance of this duty we think the plaintiff failed. The complaint alleged that the negligence of the defendants consisted in that: (a) They operated or caused to be operated the trolley cars at a high and excessive rate of speed; and (b) without proper safety appliances; (c) they failed to make proper observation; (d) they were in divers other ways careless and negligent.

As to (a), the rate of speed, the plaintiff did not specify the rate, but said the car was running fast. As to (b), the safety appliances, there was no testimony. As to (c), the defendants' failure to make proper observation, the only evidence is that the headlights were working properly, that the defendant operator of the westbound trolley could see at least two blocks away and was looking ahead and saw no person or object on the side of the eastbound trolley. As to (d), being negligent in divers other ways, the only testimony (and this was denied by the defendant operator of the westbound trolley whom the plaintiff called as his witness) was that of the plaintiff to the effect that he saw the operator "all of a

sudden" turn his head, step aside from his controls to the right and "duck" an instant before or simultaneous with the "bang." In another part of plaintiff's testimony he spoke of the operator having "ducked from the glass." This would indicate that he didn't "duck" until after the "bang."

At the close of plaintiff's case the court asked plaintiff's counsel what the plaintiff alleged the negligence of the defendant to be and he replied—"The fast rate of speed at which the car was being driven plus the fact the operator stepped away from the controls."

The plaintiff's counsel admitted there was nothing in the plaintiff's case to indicate any negligence to hold the operator of the eastbound trolley car on which the trespasser was riding and he consented to a nonsuit being entered as to him. Nor can we find evidence of any negligence on the part of the westbound operator to which in any way the accident might be attributed. Even if the westbound operator had seen the trespasser's body on the approaching eastbound car and had stopped his car, the oncoming car on which the trespasser was riding, unknown to the operator, in passing the standing trolley car, would have caused the trespasser's body to be crushed between the two trolley cars.

Therefore, the proximate cause of this accident was not speed, or stepping away from the controls, but the act of the trespasser.

The burden of establishing the negligence of the defendant is on the plaintiff and the right of the defendant to have his plaintiff bear the burden of the affirmative is a substantial one and not a mere matter of form. *Bien* v. *Unger,* 64 *N. J. L.* 596; 46 *Atl. Rep.* 593.

We conclude that inasmuch as the doctrine of *res ipsa loquitur* has no application and there was no proof of negligence, or facts from which negligence might be inferred, the trial court properly granted nonsuits as to both defendants.

The judgment is therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 14.

*For reversal*—None.