153 So. 446
## McCARLEY v. WOOD DRUGS, Inc.
### 6 Div. 369.

Supreme Court of Alabama.
March 8, 1934.

Taylor & Higgins and C. M. Hewitt, all of Birmingham, for appellant.

David J. Davis and C. J. Griffith, both of Birmingham, for appellee.

GARDNER, Justice.

■ Plaintiff's cause proceeded to trial upon counts 1 and 4, which, as a basis for recovery, rest upon the negligence of defendant in failing to exercise a proper degree of care in the selection and preparation of the food served to her in defendant's place of business. Such degree of care has been here defined as follows: "The law requires that, in the selection of the food for his restaurant and in cooking it for his customers, he shall exercise that same degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table." Travis v. Louisville & Nashville R. R. Co., 183 Ala. 415, 62 So. 851, 854.

Our decisions have recognized that in some jurisdictions the doctrine of implied warranty applies (26 C. J. p. 786) ; but this court has not followed in the wake of these authorities, consistently adhering to the rule of liability resting upon the exercise of due care as above defined. Hooper Cafe Co. v. Henderson, 223 Ala. 579, 137 So. 419 ; Greenwood Cafe v. Lovinggood, 197 Ala. 34, 72 So. 354 ; George's Restaurant v. Dukes, 216 Ala. 239, 113 So. 53 ; Louisville & N. R. R. Co. v. Travis, 192 Ala. 453, 68 So. 342.

Forcibly illustrative in this regard was the holding in Travis v. L. & N. R. R. Co., 183 Ala. 415, 62 So. 851, 853, to the effect that defendant's requested charge 18 was properly given, as follows: "The defendant is not liable as an insurer of the oysters served to plaintiff, and therefore is not liable if he was made sick by eating them, unless the jury believe from the evidence that defendant was guilty of negligence."

And in Hooper Cafe Henderson, supra, it was noted that the case of Sheffer v. Willoughby, 163 Ill. 518, 45 N. E. 253, 34 L. R. A. 464, 54 Am. St. Rep. 483, cited approvingly in Travis v. L. & N. R. R. Co., supra, held, in effect, that proof that plaintiff ate the food, and in consequence became sick, did not make out a prima facie case of negligence, nor shift the burden to defendant, and this holding was approved, with the concluding observation, that negligence or breach of duty is not to be presumed.

■ Measured by the rule of these decisions, now firmly established in this jurisdiction, the trial court correctly ruled in giving the affirmative charge in favor of the defendant.

The evidence is not voluminous and has been duly considered by the court in consultation, and we find it was sufficient from which the jury might reasonably infer plaintiff's sickness was in some manner produced by the food served her in the purchased lunch. But this alone will not suffice for the submission of plaintiff's case to the jury. There must

be some fact or circumstance from which a reasonable inference may also be drawn that defendant failed in the proper degree of care in the selection or preparation thereof.

Of course, as insisted by counsel for plaintiff, negligence may be inferred from circumstances (Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257), and direct acts need not be shown, but proof must nevertheless be adduced from which a reasonable inference of negligence may be drawn. It was so adduced in Hooper Cafe v. Henderson, supra, where fish with an unpleasant odor and taste was served with the added proof that spoiled fish may be readily detected by the senses of sight, touch, and smell—all of which justified the inference of negligence on the defendant's part. And in Travis v. L. & N. R. R. Co., supra, proof was offered as to the oysters served, upon which negligence might be reasonably inferred; and in Pantaze v. West, 7 Ala. App. 599, 61 So. 42, 44, cited by appellant, where plaintiff became sick from eating tainted brains, proof was adduced showing that such condition was easily detected, and that in fact the harmful effects might be removed by proper cooking. The court observed: "The inferences that might easily and reasonably be drawn from this evidence, it seems to us, are that, if the plaintiff was made sick from eating tainted brains, the defendant or his servants, for whose acts the defendant is liable, were negligent either in not using due care in properly cooking the brains or in failing to discover that they were tainted or in an unfit and dangerous condition to cook and serve to patrons for consumption; for it was established by the testimony that the taint was easily and readily detected by any one giving ordinary attention to the matter, and a want or failure to observe this duty and exercise due care in this regard would constitute that negligence for which the defendant would be held liable."

In the instant case there was no proof of peculiar or unpleasant odor or taste as to the food consumed, nor anything to indicate that it was in any manner improper for human consumption. Plaintiff rests her case upon proof tending to show sickness in consequence of the food consumed. But, as previously stated, this will not suffice for submission of the matter of defendant's negligence for the jury's determination.

Count 2 rested for recovery upon a breach of an implied warranty, and plaintiff insists that section 15 of the Uniform Sales Act (Gen. Acts 1931, pp. 570, 574) was intended to change the rule of liability, above discussed, and is applicable to restaurant keepers. But this section of the act is only declarative of the common law as recognized by our decisions. Sudduth v. Holloway, 212 Ala. 24, 101 So. 733, 735.

Like argument was advanced in Nisky v. Childs Co., 103 N. J. Law, 464, 135 A. 805, 807, 50 A. L. R. 227, upon the identical question, and as our view is in entire accord therewith, we adopt the response of that court as our own:

"Answering appellant's second contention that the common law has been modified by the Sale of Goods Act, already referred to, we think it is clear, not only from the foregoing, but from the avowed scope and purpose of that act, which, in respect to the question here involved, is but declaratory of the common law, that such contention cannot be sustained. The fifteenth section, subdivision 1, reads:

"'Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.'

"This is the language of the cases and was already the rule at common law. Unless, therefore, food served at a restaurant becomes a 'sale of goods' by virtue of that act, it is quite clear that no change has arisen through legislation. Our reading of the act convinces us that such change was neither effected nor intended. There is nothing in the act to suggest that it was intended to bring a transaction theretofore not recognized as a sale within its scope. We find no suggestion that a qualified transfer of food for limited purposes as hereinbefore indicated is to be transformed into a sale within the intendment of the act. The act contemplates a seller and a buyer and a contract under which the seller shall part with dominion and control over the article sold either at once or in the future, and that such dominion and control shall pass exclusively to the buyer to do with the article purchased as he will. The act is commonly known as the 'Sale of Goods Act,' and its title implies that sale of goods alone is its subject. The Legislature not having declared that a transaction such as this, in which service to the individual forms so large a part, shall constitute a sale, we are not privileged to incorporate it in the act by judicial ruling."

True, there are respectable authorities lending support to plaintiff's insistence. Friend v. Childs Dining Hall Co., 231 Mass. 65, 120 N. E. 407, 410, 5 A. L. R. 1100; West v. Katsafanas, 107 Pa. Super. Ct. 118, 162 A. 685. But these authorities also hold the restaurant keeper to liability upon the doctrine of implied warranty, and cannot here be persuasive in view of our holdings to the contrary.

Illustrative is the Massachusetts case of Friend v. Childs Dining Hall Co., supra, wherein the opinion concedes that "apparently the larger number of decisions by courts of this country hold that the liability of the innholder and restaurant keeper for furnishing deleterious food rests upon negligence." The opinion then proceeds to point out that one of the earliest adjudications to that effect is Sheffer v. Willoughby, 163 Ill. 518, 45 N. E. 253, 34 L. R. A. 464, 54 Am. St. Rep. 483, and "followed in Travis v. Louisville & Nashville Railroad, 183 Ala. 415, 424, 62 So. 851; Greenwood Cafe v. Lovinggood, 197 Ala. 34, 72 So. 354."

These Alabama cases, thus recognized as holding to a contrary doctrine, as therein announced, are commented upon and approved in the vigorous dissenting opinion to the Friend Case. We consider further discussion unnecessary.

The logic of our decisions leads to an affirmance of the trial court in sustaining the demurrer to count 2, and giving the affirmative charge for the defendant.

The judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.